1 | RICHARD H. RAHM, Bar No. 130728
rrahm@littler.com
2 | KAI-CHING CHA, Bar No. 218738
kcha@littler.com
3 | PERRY K. MISKA, JR, Bar No. 299129
pmiska@littler.com
4 | LITTLER MENDELSON, P.C.
650 California Street, 20th Floor
5 | San Francisco, CA 94108.2693
Telephone: 415.433.1940
6 | Facsimile: 415.399.8490

7 | Attorneys for Defendant
COVENANT TRANSPORT, INC.
8

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMI LONG, individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiff, | [Los Angeles Superior Court Case No. BC591375] |
| v. | **NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT BY DEFENDANT COVENANT TRANSPORT, INC.** |
| COVENANT TRANSPORT, INC., a Tennessee corporation, | |
| Defendant. | **[28 U.S.C. §§ 1332, 1441 & 1446]** |

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

Case No. _____    NOTICE OF REMOVAL

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that Defendant Covenant Transport, Inc. ("Covenant") contemporaneously with filing this Notice, hereby effects removal of the above-referenced action from the Superior Court in the State of California for the County of Los Angeles to the United States District Court for the Central District of California.

This action is removed pursuant to the procedures found in 28 U.S.C. sections 1441 and 1446, and removal jurisdiction is based on 28 U.S.C. section 1332(d) (Class Action Fairness Act ["CAFA"]).

## I. PROCEDURAL BACKGROUND

1. This lawsuit arises out of the work performed by Plaintiff Tami Long ("Plaintiff") as company driver for Covenant. On August 17, 2015, Plaintiff filed a complaint in the Superior Court of the State of California, County of Los Angeles, entitled *Tami Long, individually and on behalf of others similarly situated v. Covenant Transport, Inc., a Tennessee Corporation*, designated as Case No. BC591375 ("Complaint"). *See* Declaration of Kai-Ching Cha ("Cha Decl.") ¶ 2, Exhibit ("Exh.") 1. The Complaint asserts the following claims for relief: (1) Failure to Pay Separately and Hourly for Time Spent by Drivers on Rest Breaks, Pre- and Post-Trip Inspection Time, Waiting Time, Cleaning, Fueling and Paperwork Time; (2) Failure to Provide Paid Rest Periods and Pay Missed Rest Break Premiums; (3) Failure to Provide Meal Periods; (4) Failure to Provide Accurate Wage Statements; (5) Waiting Time Penalties; (6) Failure to Reimburse Business Expenses; (7) PAGA Penalties; and (8) UCL Violations. *See* Cha Decl. ¶ 2, Exh. 1 (Complaint).

2. On August 19, 2015, Plaintiff served the Summons and Complaint on Covenant. *See* Cha Decl. ¶ 3, Exh. 2 (Proof of Service). A true and correct copy of the Summons and Complaint package served upon Covenant is attached as Exhibit 1 to the Cha Declaration.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

Case No. _____                    2.                    NOTICE OF REMOVAL

3. On September 17, 2015, Covenant filed its Answer to Plaintiff's Complaint in the Superior Court of California for the County of Los Angeles. A copy of Covenant's Answer is attached hereto as Exhibit **3** to the Cha Declaration. *See* Cha Decl. ¶ 4, Exh. 3.

4. Pursuant to 28 U.S.C. Section 1446(d), the attached exhibits constitute all process, pleadings, and orders served upon Covenant or filed or received in this action by it. To Covenant's knowledge, no further process, pleadings, or orders related to this case have been filed in Los Angeles County Superior Court or served by any party.

5. As of the date of this Notice of Removal, no other parties have been named or served with the Summons and Complaint in this action.

## II. REMOVAL PROCEDURE

### A. Removal Is Timely Because Notice And The Accompanying Pleadings Have Been Filed Within Thirty Days.

6. An action may be removed from state court by filing a notice of removal, together with a copy of all process, pleadings, and orders served on the defendant, within thirty days of defendant receiving the initial pleading, and within one-year of the commencement of the action. *See* 28 U.S.C. § 1446(a), (b). Removal of this action is timely because this Notice has been filed within thirty days from August 19, 2015, when Covenant was served with the Complaint and first became aware this action was removable. *See* Cha Decl. ¶ 3, Exh. 2; *see also* 28 U.S.C. § 1446(b). As referenced above, this Notice also contains all process, pleadings, and orders that Plaintiff served on Covenant. *See* Cha Decl. ¶ 2, Exh. 1.

### B. Venue Is Proper In This District Pursuant To The Removal Statute And Diversity.

7. Venue is proper in this Court because Plaintiff originally filed this action in Los Angeles County Superior Court, located within the District and Division of the Court. *See* 28 U.S.C. § 1446(a). Venue of this action is also proper because

Case No. _____ 3. NOTICE OF REMOVAL

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

jurisdiction is based on the Class Action Fairness Action of 2005 ("CAFA"), and the action may be venued in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.  *See* 28 U.S.C. § 1391(b).  Plaintiff alleges many of the operative acts took place in Los Angeles County.  *See* Cha Decl., Exh. 1 at ¶ 3.

### III. REMOVAL JURISDICTION

**A.   This Court Has Original Jurisdiction Under CAFA.**

8.   This Court has original jurisdiction over this action pursuant to the CAFA because: (1) at least one member (if not all) of Plaintiff's class is a citizen of a state different from Covenant; (2) Plaintiff filed a class action on behalf of a class with over 100 putative class members; and (3) the amount in controversy exceeds the five million dollars, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d).

**B.   Diversity Exists Because Plaintiff Is A California Citizen And Covenant Is a Citizen of Tennessee.**

9.   CAFA diversity jurisdiction exists if "any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A).

10.   Plaintiff alleges in her Complaint that she was at the time of the filing of this action, and is, a resident and citizen of the State of California.  *See* Cha Decl., Exh. 1 at ¶ 5; *see also, District of Columbia v. Murphy*, 314 U.S. 441, 455 ("place where a man lives is properly taken to be his domicile until the facts adduced establish the contrary"); *Gutterman v. Wachovia Mortgage*, 2011 U.S. Dist. LEXIS 74521, *4 (C.D. Cal. Mar. 31, 2011) (plaintiff's residence and ownership of property sufficient to establish his domicile in California).

11.   For diversity jurisdiction, a corporation is deemed a citizen of its state of incorporation and the state where it has its principal place of business.  *See* 28 U.S.C. § 1332(c)(1).  Plaintiff's Complaint concedes that Covenant "is a Tennessee corporation with its headquarters and principal place of business in Chattanooga,

Case No. _____         4.               NOTICE OF REMOVAL

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

Tennessee, located in Hamilton County…" Cha Decl., Exh. 1 at ¶ 6. When this action was commenced in state court, Covenant was, and still is, a corporation organized under the laws of the State of Tennessee. *See* Declaration of Melinda Askew ("Askew Decl.") ¶ 2. Covenant's principal place of business, where its corporate offices and headquarters which house its executive and administrative functions are located, is in Chattanooga, Tennessee. *See id.* Covenant is a citizen of the State of Tennessee, where it is incorporated and where it has its principal place of business. *See Hertz Corp. v. Friend*, 130 U.S. 1181, 1192-93 (2010) (the principal place of business is "where a corporation's officers direct, control, and coordinate the corporation's activities").

12. No party other than Covenant has been named or served as of the date of this removal.

13. As set forth above, Plaintiff is a citizen of the State of California, while Covenant is a citizen of the State of Tennessee. *See* Cha Decl., Exh. 1 at ¶¶ 5, 6. Complete diversity of citizenship exists because the named parties are citizens of different states.

**C. Plaintiff Alleges Claims On Behalf Of More Than 100 Putative Class Members.**

14. CAFA provides this Court with jurisdiction over a class action when "the number of members of all proposed plaintiff classes in the aggregate [is not] less than 100." 28 U.S.C. § 1332(d)(5)(B). CAFA defines "class members" as those "persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action." 28 U.S.C. § 1332(d)(1)(D).

15. Plaintiff alleges her causes of action regarding a class of individuals who are or have been employed as truck drivers by Covenant who are California residents and who drove at least one route greater than 2.5 hours that began and ended in California over the last four years. *See* Cha Decl., Exh. 1 at ¶ 34. The time period in this lawsuit is defined in the Complaint as "the four (4) years prior to

Case No. _____  5.  NOTICE OF REMOVAL

the filing of this action through the trial date." *Id.* at ¶ 2. Because the Complaint was filed on August 17, 2015, Plaintiff seeks to represent all Covenant truck drivers from August 17, 2011 up to and through the trial date. *See id.*

16.  Plaintiff alleges at "any one time during the Class Period, Defendant employed a total of approximately 2,000 truck drivers who informed Defendant that they were California residents and who drive [sic] some routes within California. Due to turnover during the Class Period, the total number of class members is estimated to be 5,000." *See* Cha Decl., Exh. 1, ¶ 7. In fact, there are approximately 1,800 California-based putative class members as defined by Plaintiff. *See* Askew Decl. ¶ 4. This satisfies CAFA's numerosity requirement. *See* 28 U.S.C. § 1332(d)(5)(B).

**D.   The Amount In Controversy Is Over Five Million Dollars Based On The Damages and Statutory Penalties Sought By Plaintiff.**

17.  CAFA requires the "matter in controversy" to exceed "the sum or value of $5,000,000 exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). To remove a case from a state court to a federal court, a defendant must file a notice of removal containing a short and plain statement of the grounds for removal. *See Dart Cherokee Basin Operating Company LLC v. Brandon W. Owens*, 135 S. Ct. 547, 551 (2014). When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so. *See id*. Defendant's notice of removal must simply include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 554; *Ibarra v. Manheim Investments, Inc.*, 775 F. 3d 1193, 1195 (9th Cir. 2015) (same). Evidence establishing the amount in controversy is only required when plaintiff contests, or the court questions defendant's allegations. *See Dart*, 135 S. Ct. at 551. "[N]o antiremoval presumption attends cases invoking CAFA." *Id.* at 554.

18.  "The claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds" this amount. 28 U.S.C.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

Case No. _____                 6.                    NOTICE OF REMOVAL

1  § 1332(d)(6).  "In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002).  The ultimate inquiry is what amount is put "in controversy" by the plaintiff's Complaint, not what a defendant will actually owe.  *See Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005); *see also Ibarra*, 775 F.3d at 1198 fn. 1 (explaining that even when the court is persuaded the amount in controversy exceeds $5 million, defendants are still free to challenge the actual amount of damages at trial because they are only estimating the damages in controversy).

19.  Covenant denies the validity and merits of Plaintiff's claims, the legal theories upon which they are purportedly based, and the claims for monetary and other relief that flow from them.  Nevertheless, and notwithstanding Plaintiff's failure to allege the total damages claimed, the amount in controversy as alleged by Plaintiff exceeds the sum of five million dollars.

20.  Plaintiff alleges a cause of action for violating the Unfair Competition Law ("UCL"), Business and Professions Code section 17200, *et seq.*  *See* Cha Decl., Exh. 1, ¶¶ 81-96.  Alleging a UCL violation extends the statute of limitations on Plaintiff's wage and hour claims from three to four years back to August 17, 2011.  *See* Bus. & Prof. Code § 17208; *Cortez v. Purolater Air Filtration Products Co.*, 23 Cal.4th 163, 178-79 (2000) (four-year statute of limitations for restitution of wages under the UCL).  Plaintiff additionally seeks waiting time penalties under Labor Code section 203, which has a statute of limitations of three years.  *See* Cha Decl., Exh. 1, ¶¶ 65-70; *Pineda v. Bank of America, N.A,* 50 Cal. 4th 1382, 1935 (2010) (three-year statute of limitations for section 203 claim); Lab. Code § 203(b).

///

///

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

Case No. _____     7.     NOTICE OF REMOVAL

        **a.    There Is Over $1.9 Million In Controversy Based On Plaintiff's Piece-Rate, Minimum-Wage Claim.**

21.    In her First Cause of Action, Plaintiff alleges Covenant's piece-rate compensation policy violated California's minimum wage statute because it compensated drivers only for driving and not for non-driving tasks. *See* Cha Decl., Exh. 1 at ¶¶ 40-41. Plaintiff alleges such non-driving tasks include cleaning the truck, fueling, paperwork and time spent waiting while the truck was loaded and unloaded. *See* Cha Decl., Exh. 1 at ¶¶ 11-14.

        **(1)    There Is Over $1.1 Million In Controversy For Alleged Uncompensated Loading And Unloading.**

22.    Plaintiff alleges she, "like other members of the Class, ***typically waited up to 5 hours per shift*** while waiting to load or unload a truck, but received no separate and hourly pay for waiting time." *See* Cha Decl., Exh. 1 at ¶ 12 (emphasis supplied). "Typically" is defined as "generally" or "normally," and it is synonymous with "usually." *See* www.merriam-webster.com/dictionary/typically.

23.    From August 17, 2011 through September 14, 2015, the average annual number of full-time equivalent employee ("FTE") drivers during this period at Covenant was 307. *See* Askew Decl. ¶ 4. Likewise, during this period Covenant's drivers, on average, worked five days a week, fifty weeks a year, or 250 days. *See id.* at ¶ 5. Since Plaintiff alleges she "typically" waited up to five hours a shift, Covenant will use the midpoint, or 2.5 hours, per shift. The average minimum wage during the putative class period is $8.40 per hour, which, for a 2.5 hour period, would be $21.00 per day for waiting time (2.5 hours x $8.40 = $21). *See* Request for Judicial Notice ("RJN"), Ex. A. Based on the above, Covenant drivers worked 76,760 work days each year (307 FTEs x 250 days = 76,750 work days). For the four-year putative class period, this would be 307,000 work days (4 x 76,750). At $21 per day, there would be a total $6,447,000 ($21 x 307,000 work days).

///

Case No. _____        8.        NOTICE OF REMOVAL

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

24. Plaintiff, however, has alleged Covenant drivers spend "[a]t least a couple of times per month … driv[ing] routes that began and ended within the state of California." Cha Decl., Exh. 1 at ¶ 10. This means, at the very least, Covenant's drivers spend 24 full days a year in California (2 x 12 months), approximately 10% of their time (24 days in California/250 work days = 9.6%). Assuming Covenant would only incur liability when its drivers were in California, Covenant would have approximately $644,700 in minimum wage damages. Labor Code section 1194.2 provides for liquidated damages for minimum-wage violations in an amount equal to the unpaid minimum wages for a three-year period. See Lab. Code § 1194.2(a). Covenant's total liability for waiting time would thus be **$1,128,225** ($644,700 + [3/4 x $644,700]).

### (2) There Is Over $487,000 In Controversy For Alleged Uncompensated Periods For Fueling.

25. Plaintiff alleges she, "like other members of the Class, typically waited one-half to 2.5 hours in order to fill up her their truck's gas tanks, depending on how many other truck drivers were waiting to fill up." Cha Decl., Exh. 1 at ¶ 13. To be conservative, Covenant will use the midpoint of Plaintiff's range, or 1.5 hours per fueling stop, which, at $8.40 minimum wage, the average alleged compensation for each fueling would $12.60. See RJN, Ex. A.

26. Based on Covenant's records, Covenant truck drivers on average stopped for fuel 3.6 times per week throughout the putative class period. See Askew Decl. ¶ 7. At $12.60 per fueling stop, there would be $45.36 in compensation owed each driver each week ($12.60 x 3.6). Covenant's drivers work on average 50 weeks a year and, with 307 FTE drivers each year, the annual liability would be $696,276 (50 x 307 x $45.36). See Askew Decl. ¶ 5. For a four-year putative class period, there would be $2,785,104 in liability (4 x $696,276). However, because Plaintiff alleges Covenant's drivers are in California at least 10%, the total lost wages for fueling stops

///

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

Case No. _____                9.                    NOTICE OF REMOVAL

would be $278,510. With liquidated damages for three of the four years, the total liability would be **$487,393** ($278,510+ [.75 x $278,510]).

### (3) There Is Over $300,000 In Controversy For Time Spent Cleaning Trucks.

27. Plaintiff alleges she "and Class Members typically cleaned their trucks 1 to 2 times per week, and spent, on average 1 to 3.5 hours per cleaning session, including on their California routes." *See* Cha Decl., Exh. 1 at ¶ 14. Covenant will use the average 1.5 times per week, with an average time of 2.25 hours spent cleaning the trucks. At minimum wage, this would amount to $28.35 (1.5/week x 2.25 hours x $8.40) owed per week per employee for truck cleaning.

28. Covenant drivers work approximately 50 weeks a year, and so there are 72,000 workweeks in the putative class period (307 FTEs x 50 weeks x 4 years), which, at $28.35 per week, amounts to $1,740,690. *See* Askew Decl. at ¶¶ 4, 5. Because Covenant drivers spend at least 10% of their time in California, the total alleged unpaid minimum wages for truck cleaning would be $174,069. With liquidated damages equal to three of the four years, the total liability would be **$304,620** ($174,069+ [.75 x $174,069]).

In summary, the total liability for alleged unpaid waiting time, fueling time, and cleaning time would be ***at least* $1,920,238** ($1,128,225 + 487,393 + $304,620).

### b. There Is Over $700,000 In Controversy Based On Alleged Missed Or Unpaid Rest Breaks.

29. Plaintiff's Second Cause of Action is for failing to provide paid rest periods and failing to pay premium pay for missed rest periods. *See* Cha Decl., Exh. 1 at ¶¶ 44-50.

30. California law requires employers to provide paid 10-minue rest breaks for each four hours worked, or major fraction thereof. *See* IWC Wage Order No. 9; Labor Code § 226.7. Plaintiff alleges that throughout the class period,

Case No. _____    10.    NOTICE OF REMOVAL

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

1  Covenant failed to adopt a rest-break policy consistent with California law, and that
2  Covenant's drivers were not authorized to take paid 10-minute rest breaks. *See* Cha
3  Decl., Exh. 1 at ¶ 15. Plaintiff further alleges that Covenant's drivers, "[o]n a routine
4  basis … worked shifts that were longer than 10 hours." *Id.* Finally, Plaintiff alleges
5  that, even if Covenant drivers took a rest break, it was not paid for, and therefore
6  subject to a one-hour premium for a missed paid rest break. *See id.* at ¶¶ 15, 49-50.
7  From these allegations, Plaintiff is alleging 100% liability: (1) Because no rest breaks
8  were separately paid, Covenant is liable for the separate hourly payment for the 10-
9  minute rest period; and (2) any rest break taken, because it was not paid, Covenant
10 violated Labor Code section 226.7, and owes one hour of premium pay for each rest
11 break. *See id. See also Duberry v. J. Crew Group, Inc.*, 2015 U.S. Dist. LEXIS
12 99171, * 7 (C.D. Cal. July 28, 2015) (100% violation rate may be based on allegations
13 of a "uniform" illegal practice).

14        31.    Although Plaintiff alleges Covenant's drivers "routinely" worked
15 10-hour shifts, thus entitling them to two 10-minute rest breaks, because Covenant's
16 own records show that drivers, on average, worked approximately 7 hours a day,
17 Covenant will assume entitlement to only one rest break per day. *See* Askew Decl.
18 ¶ 5. However, based on Plaintiff's allegations, every putative class member would be
19 entitled to 10 minutes at their hourly rate for each day worked in California, besides
20 one hour of premium pay for each day worked in California. *See* Cha Decl., Exh. 1 at
21 ¶¶ 15-49-50; Lab. Code § 226.7.

22        32.    During the putative class period, Covenant drivers earned
23 approximately $36,800 per year. *See* Covenant Rep. Decl. ¶ 6. Based on a 7-hour
24 day, five days a week and 50 weeks a year, Covenant drivers worked on average 1,750
25 hours (50 weeks x 5 days x 7 hours), which, divided into $36,800, is $21.03 per hour.
26 *See id.* Plaintiff alleged Covenant's drivers drive in California at least two days a
27 month, or 24 days a year. *See* Cha Decl., Exh. 1 at ¶ 10. As there are 307 FTE drivers
28 each year, there would be 7,368 days worked in California each year, or 29,472 days

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

Case No. _____        11.        NOTICE OF REMOVAL

worked in California during the putative class period (307 FTEs x 24 days x 4 years). A 10-minute rest break is 1/6 of an hour, paid at $21.03 per hour, or $3.49 per rest break. If Covenant's drivers worked 29,472 days in California, they would be owed $102,857 (29,472 days x $3.49). In addition, Covenant's drivers would be owed one hour of "premium" wages for one missed rest period each day they were in California, or $619,754 (29,472 days x $21.03), which, added to $102,857, would amount to a total liability of **$722,611** for rest periods.

         **c.**    **There Is Over $37,000 In Controversy Based On Alleged Missed Meal Periods.**

33. Plaintiff alleges in her Third Cause of Action that Covenant failed to provide 30-minute, off-duty meal breaks before the end of the fifth hour of work because Covenant did not have a California-complaint meal-break policy. *See* Cha Decl., Exh. 1 at ¶¶ 15, 51-58. Moreover, Plaintiff alleges that, even when drivers took 30-minute meal breaks, if the driver was transporting a high-value load, he or she was required to stay with the truck during the meal period. *See id.* at ¶ 17. As such a meal period would not be duty-free, Plaintiff has alleged that all drivers of high-value loads would not have received a California-compliant meal break, and therefore be owed one hour's of premium wages under Labor Code section 226.7. *See id.* at ¶ 19.

34. Covenant estimates it carries "high-value" load approximately six percent of the time. *See* Askew Decl. ¶ 7. Based on Plaintiff's allegation that Covenant's drivers spent at least two days a month in California, the estimated liability would **$37,185** ($21.03 per hour x 307 FTE drivers x 24 days in California x 4 years x 6%).

         **d.**    **There Is Over $1.2 Million In Controversy Based On Plaintiff's Wage Statement Claim.**

35. Plaintiff's Fourth Cause Of Action alleges Covenant violated Labor Code Section 226(a) by issuing wage statements "which do not include total hours worked and all applicable hourly rates in effect during the pay period and the

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

Case No. _____      12.      NOTICE OF REMOVAL

corresponding number of hours worked at each hourly rate for rest breaks and Non Driving Tasks." *See* Cha Decl., Exh. 1 at ¶ 62. Since section 226(a)(2) requires a wage statement to show an employee's total hours for the pay period, and section 226(a)(9) requires the wage statement to show all applicable hourly rates, each wage statement issued by Covenant would violate the statute. The statutory penalty for such a violation is $50 for the first pay period, and $100 for each subsequent pay period, up to a total maximum penalty of $4,000. *See* Lab. Code § 226(e). Section 226(e) has a one-year statute of limitations. *See Blackwell v. SkyWest Airlines, Inc.*, 245 F.R.D. 453, 462 (S.D. Cal. 2007).

36. Covenant pays its drivers weekly, and it therefore has 52 pay periods a year. *See* Askew Decl. ¶ 8. Under Labor Code section 226(e), an employee would be entitled to the maximum of $4,000 in penalties in his or her forty-second pay period. *See* Lab. Code § 226(e). The estimated amount in controversy related to Plaintiff's wage claim is **$1,228,000** (307 FTE drivers x $4,000).

    **e. There Is Over $4.2 Million In Controversy Based On Plaintiff's Waiting-Time Penalties Claim.**

37. Plaintiff's Fifth Cause of Action is for statutory waiting-time penalties under Labor Code section 203. *See* Cha Decl., Exh. 1 at ¶¶ 65-70. Section 203 provides for one-day's wages for each day an employee who has separated from his or her employer is not paid all wages owed, up to a total of thirty days' of wages. *See* Lab. Code § 203. Section 203 has a three-year statute of limitations. *See id.* During that time, approximately 961 putative class members have separated from Covenant. *See* Askew Decl. ¶ 4.

38. Plaintiff has alleged a 100% violation rate in her first two causes of action. In her First Cause of Action, Plaintiff alleges Covenant compensates its drivers on a piece-rate basis, which pays only for actual driving time, and does not compensate for such non-driving activities such as "inspections, cleaning/fueling and/or paperwork/check-in and check-out and waiting time..." *See* Cha Decl., Exh. 1

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

Case No. _____   13.   NOTICE OF REMOVAL

at ¶ 11.  Likewise, Plaintiff has alleged Covenant does not separately compensate its drivers for rest breaks.  *See id.*  Based on Plaintiff's allegations, every class member would be entitled to additional compensation, which would include those drives who have left the Company.

39.     Covenant estimates its drivers work approximately seven hours a day, which, at $21.03 per hour, would be $147 per day, and would be $4,410 for thirty days of wages.  *See* Askew Decl. ¶ 5.  Since 961 drivers have separated from Covenant in the last three years, the total potential liability for this cause of action would be **$4,243,776**.

### f.  There Is Over $800,000 In Controversy Based On Plaintiff's Reimbursement Claims.

40.     Plaintiff's Sixth Cause Of Action is for failure to reimburse business expenses in violation of Labor Code section 2802.  *See* Cha Decl., Exh. 1 at ¶¶ 71-75.  Plaintiff alleges Covenant drivers are required to use their personal cell phones to remain in contact with Covenant dispatchers, managers and customers.  *See* Cha Decl., Exh. 1 at ¶¶ 25-27.  Plaintiff further alleges Covenant expects drivers to pay for cell phones in the discharge of their job duties and these expenses amount to between $10 per month to $100 per month per driver.  *See* Cha Decl., Exh. 1 at ¶ 28.  Assuming the average monthly business expense for a cell phone is $55, the estimated amount in controversy related to business expenses is **$810,480** ($55 per month x 12 months x 307 FTE drivers x 4 years).

///
///
///
///
///
///
///

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

Case No. _____         14.                    NOTICE OF REMOVAL

### g. There Is Over $8 Million In Controversy, $3 Million Over The Jurisdictional Minimum.

41. The aggregate amount exceeds the $5 million jurisdictional minimum.

| Plaintiff's Causes Of Action | Amount In Controversy |
|---|---|
| Unpaid Minimum Wages For Time Spent On Non-Driving Work Duties | $1,920,238 |
| Unpaid Rest Breaks and Rest Break Premiums | $722,611 |
| Meal Break Premiums | $37,185 |
| Wage Statements | $1,228,000 |
| Waiting Time Penalties | $4,243,776 |
| Unreimbursed Business Expenses | $810,480 |
| **Total:** | **$8,962,290** |

42. The $8,962,290 total is over the jurisdictional minimum of $5 million. *See* 28 U.S.C. § 1332(d)(2). This is before adding in an amount representing Plaintiff's potential recovery of attorney's fees and costs if she prevailed at trial. Plaintiff seeks attorneys' fees for the first, fourth and sixth causes of action. *See* Cha Decl., Exh. 1, Prayer for Relief. The "amount in controversy" requirement under CAFA is satisfied.

### IV. NOTICE OF REMOVAL TO THE COURT AND ADVERSE PARTY

43. Contemporaneously with filing this Notice of Removal in the United States District Court for the Central District of California, written notice of such filing will be given by the undersigned to Plaintiff's counsel of record, and a copy of the Notice of Removal will be filed with the Clerk of the Court for the Superior Court of the County of Los Angeles, California as required by 28 U.S.C. section 1446(d).

///

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

Case No. _____ 15. NOTICE OF REMOVAL

## V. CONCLUSION

44. Covenant therefore removes the civil action filed against it in the California Superior Court, County of Los Angeles, to the United States District Court for the Central District of California.

Dated: September 17, 2015

/s/ *Kai-Ching Cha*
RICHARD H. RAHM
KAI-CHING CHA
LITTLER MENDELSON, P.C.
Attorneys for Defendant
COVENANT TRANSPORT, INC.

Firmwide:135855790.1 069683.1000

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

Case No. _____    16.    NOTICE OF REMOVAL